# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

## Daniel K. VANTERPOOL,
### Yeoman Third Class (E-4), U.S. Coast Guard

## CGCMG 0210

## Docket No. 1255

## 2 July 2007

General Court-Martial convened by Commander, Eighth Coast Guard District. Tried at Pensacola, Florida, on 2 August 2005.

| | |
|---|---|
| Military Judge: | CAPT Brian M. Judge, USCG |
| Trial Counsel: | LT Bart A. Marcules, USCGR |
| Assistant Trial Counsel: | LT Ann C. McSpadden, USCG |
| Defense Counsel: | LTJG Beth C. Kontny, JAGC, USNR |
| Appellate Defense Counsel: | LCDR Nancy J. Truax, USCG |
| Appellate Government Counsel: | LCDR John S. Luce Jr., USCG |

## BEFORE
## McCLELLAND, KANTOR & CAHILL[*]
### Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by general court-martial, military judge alone. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, Appellant was convicted of one specification of assault, in violation of Article 128, Uniform Code of Military Justice (UCMJ). The military judge sentenced Appellant to a bad-conduct discharge, confinement for sixteen months, forfeiture of all pay and allowances, and reduction to E-2. The sentence was unaffected by the pretrial agreement, and the Convening Authority approved it as adjudged.

Before this Court, Appellant has assigned three errors:

I. The military judge abused his discretion in denying Appellant's motion for appropriate relief in the nature of additional pretrial confinement credit by finding

---

[*] Judge Cahill did not participate in this decision.

that the Initial Review Officer did not shift the burden to the defense to show that Appellant would commit serious criminal misconduct in the future; the Initial Review Officer did not consider whether lesser forms of restraint were adequate to prevent future serious criminal conduct, and the military judge erred in concluding, de novo, that lesser forms of restraint were not available.

II. The Convening Authority erred in acting upon Appellant's case when it was readily apparent that there was a page missing from his clemency submission.

III. The Convening Authority erred by ordering the punitive discharge executed prior to the completion of appellate review.

We reject Assignment II. We find no error and no prejudice in the Convening Authority's taking action without the second page of the clemency submission, which summed up information that was otherwise presented, and the absence of which was not obvious. As to Assignment III, following *United States v. Bayle*, 56 M.J. 762, 763 (C.G.Ct.Crim.App. 2002), we consider the portion of the Convening Authority's action ordering execution of the bad-conduct discharge to be a nullity. We discuss Assignment I, and affirm.

**Facts**

Appellant was ordered into pretrial confinement on 15 March 2005 by the commanding officer of USCGC BARBARA MABRITY (WLM 559). On 17 March 2005, the commanding officer promulgated the 48-hour probable cause determination/72-hour memorandum required by Rule for Courts-Martial (R.C.M.) 305(i)(1) and (h)(2)(C), Manual for Courts-Martial, United States (2005 ed.). The 7-day review of pretrial confinement required by R.C.M. 305(i)(2) was held on 18 March 2005.

The Initial Review Officer (IRO) who held the 7-day review signed a record of the review (hereafter "IRO record"), a copy of which is attached to Appellate Exhibit VII, consisting of two typed pages individualized with Appellant's name; the confining authority; the date of review; the UCMJ article he was charged with violating; and the IRO's own signature block, with spaces and bold-text prompts calling for handwritten additions indicating whether Appellant and his counsel appeared, who represented the command and what the representative said, who represented Appellant and what the representative said, and his (IRO's) decision with rationale.

Among other preliminary text, the IRO record includes the following typewritten text:

The accused was advised that the purpose of the review was to determine the adequacy of probable cause to believe the accused had committed the offense(s) and of the necessity for continued pretrial confinement. Specifically, the accused was advised that the Reviewing Officer would review the determination by the accused's Commanding Officer under R.C.M. 305(h)(2)(B) of [the Manual for Courts-Martial (2000 Edition)] that:
   a. An offense triable by court-martial had been committed;
   b. The accused committed it; and
   c. Confinement is necessary because it is foreseeable that:
      (1) The accused will not appear at trial, pretrial hearing, or investigation; or
      (2) The accused will engage in serious criminal misconduct; and
   d. Less severe forms of restraint are inadequate.

The IRO record includes the following handwritten summary of the command representative's statement:

P.O. Vanterpool made a premeditated assault on SN Ansley. P.O. Vanterpool admitted to the assault. The victim's and witness statements all agreed according to the CGIS investigator. P.O. Vanterpool is a flight risk and could easily commit another assault.

The IRO record includes the following handwritten summary of a statement submitted by the accused:

Accused's counsel submitted that he was defending himself. That pretrial confinement was excessive. That he had not been drinking. That the victim was not trustworthy. That some of the witnesses were not truthful.

The IRO record concludes with the following:

**IT IS HEREBY DETERMINED BY THE REVIEWING OFFICER THAT:**

_____ The accused should be released from pretrial confinement.
___X__[1] A preponderance of the evidence supports the Commanding Officer's determination that an offense(s) triable by court-martial has/have been committed, that the accused committed it/them, and that **the accused should remain in pretrial confinement because:** [handwritten] the assault was made with premeditation from a period of "cooling off." There was not enough evidence produced to show that P.O. Vanterpool would not make another assault.

---

[1] The "X" was handwritten.

At the one-day trial, Appellant moved for "relief from pretrial confinement in violation of R.C.M. 305." (Appellate Ex. VII 1.) Appellant argued by written motion and in oral argument that the IRO shifted the burden to the defense to prove that Appellant would not commit serious criminal misconduct, rather than requiring the Government to prove by a preponderance of the evidence, as required by R.C.M. 305(h)(2)(B)(iii), that it was foreseeable that he would. Appellant also argued that the IRO failed to find by a preponderance of the evidence that lesser forms of restraint were inadequate, as required by R.C.M. 305(h)(2)(B)(iv). As relief, Appellant requested extra confinement credit.

After hearing evidence and argument, the military judge denied the motion with the following words:

> The defense motion for appropriate relief is denied. I find that the initial review officer did not abuse his discretion in determining that Petty Officer Vanterpool should remain in pretrial confinement because the evidence presented to the initial review officer indicated that Petty Officer Vanterpool would engage in serious criminal misconduct, specifically that the nature of his unprovoked premeditated assault with a baseball bat on a shipmate proved by a preponderance of the evidence that Petty Officer Vanterpool posed a serious threat to the community and to his command.
>
> I do not find that the IRO shifted the burden to Petty Officer Vanterpool. While not artfully worded, I believe that the IRO was indicating the result of his balancing of the evidence when he stated that there was not enough evidence produced to show that Petty Officer Vanterpool would not make another assault.
>
> Finally, I find that there's no indication that the IRO determined that Petty Officer Vanterpool was a flight risk.

(R. at 43-44.)

After trial, the military judge entered a written order denying Appellant's motion for appropriate relief. (Appellate Ex. XII.) The following paragraphs of the order are relevant:

> 4. The IRO did not abuse his discretion in determining that it was foreseeable that YN3 Vanterpool would engage in serious criminal misconduct. The evidence presented to the IRO included the fact that YN3 Vanterpool had brought the weapon, a baseball bat, to SN Ansley's apartment; that prior to entering the apartment he told Ms. Burton that he intended to beat SN Ansley with the bat; that, seconds after his argument with SN Ansley had been interrupted by Mrs. Anderson, he struck SN Ansley on the head with the baseball bat; and that there was no explanation for the attack. (Although the defense argued to the IRO that YN3 Vanterpool acted in self-

defense, no evidence was introduced supporting this claim.) Considering the lack of explanation and the savage nature of this unprovoked, premeditated assault with a baseball bat on a junior shipmate, the IRO's determination that it was foreseeable that YN3 Vanterpool would engage in serious criminal misconduct was supported by the evidence. In fact, were I reviewing the IRO's decision *de novo* rather than under the abuse of discretion standard, I would also find that it was foreseeable that YN3 Vanterpool would engage in serious criminal conduct.

5. In his 48-hour letter, the Commanding Officer, USCGC BARBARA MABRITY, stated that he considered less severe forms of restraint and decided they were inadequate because the assault was on a shipmate. Under those circumstances, it was reasonable for the Commanding Officer to determine that YN3 Vanterpool could not "be safely returned to [his] unit, at liberty or under restriction, arrest, or conditions on liberty." While the IRO made no specific finding in regard to considering less severe forms of restraint, I find that the nature of the assault combined with the fact that it was on a junior shipmate provide reasonable grounds supporting the Commanding Officer's determination that lesser forms of restraint were inadequate. Having already found that it was foreseeable that YN3 Vanterpool would engage in serious criminal conduct, returning him to his unit, or even to other commands located at Group Mobile, and restricting him to the USCGC BARBARA MABRITY or Group Mobile would not adequately protect members of the command and the Coast Guard community.

6. The accused argued that the IRO improperly shifted the burden of proof from the government to the defense based on the IRO's finding that "there was not enough evidence produced to show that P.O. Vanterpool would not make another assault." I find that the IRO did not shift the burden to the accused. While his findings are not artfully worded, the IRO is not a lawyer. I believe that his wording was an indication of his balancing of the evidence that YN3 Vanterpool was likely to engage in serious misconduct with the evidence offered by the accused to the contrary. Given the limited evidence presented by the accused — an unsupported statement from his counsel that he was acting in self-defense and that some of the witnesses were not truthful — a finding that "not enough evidence was produced" to outweigh the evidence that "the assault was made with premeditation" appropriately describes the evidence.

7. Consequently, the IRO did not abuse his discretion by continuing the accused in pretrial confinement.

(Appellate Ex. XII 3-4.)

## Law

Appellant argues that the IRO abused his discretion by shifting the burden of proof to Appellant concerning future serious misconduct, and that the military judge abused his discretion in affirming the IRO.

He also argues that the IRO failed to comply with R.C.M. 305 concerning lesser forms of restraint, and that the military judge was therefore required to grant additional credit for pretrial confinement. The military judge noted in his written order that "the IRO made no specific finding in regard to considering less severe forms of restraint." (Appellate Ex. XII 3.) Appellant argues that at this point, the military judge was required to grant credit as a matter of law, because he had found a failure to comply with subsection (h), by reference from subsection (i) of the rule. Instead, Appellant complains, the military judge proceeded to address that issue himself, concluding that lesser forms of restraint were inadequate.

R.C.M. 305(i)(2) governs the IRO's function. It requires that within seven days of the imposition of confinement, a neutral and detached officer shall review the determination of probable cause that an offense has been committed by the prisoner and the necessity for continued pretrial confinement. The essence of the IRO's function is to determine whether the requirements for confinement under R.C.M. 305(h)(2)(B) are present, upon a preponderance of the evidence. R.C.M. 305(i)(2)(A)(iii).

There is no dispute in this case as to probable cause that an offense had been committed by the prisoner. As to the necessity for continued pretrial confinement, it is present if:

> (iii) Confinement is necessary because it is foreseeable that:
>     (a) The prisoner will not appear at trial, pretrial hearing, or investigation, or
>     (b) The prisoner will engage in serious criminal misconduct; and
> (iv) Less severe forms of restraint are inadequate.

R.C.M. 305(h)(2)(B).

The IRO's "conclusions, including the factual findings on which they are based, shall be set forth in a written memorandum." R.C.M. 305(i)(2)(D).

The IRO's work is subject to judicial review under R.C.M. 305(j):

> (j) *Review by military judge.* Once the charges for which the accused has been confined are referred to trial, the military judge shall review the propriety of pretrial confinement upon motion for appropriate relief.
>
>     (1) *Release. . . .*
>
>         . . . .

(2) *Credit.* The military judge shall order administrative credit under subsection (k) of this rule for any pretrial confinement served as a result of an abuse of discretion or failure to comply with the provisions of subsections (f), (h), or (i) of this rule.

## Conclusion

We do not agree that the IRO shifted the burden of proof to Appellant on the issue of future serious misconduct. We agree with the military judge that the IRO's wording was most likely "an indication of his balancing of the evidence that YN3 Vanterpool was likely to engage in serious misconduct with the evidence offered by the accused to the contrary." (Appellate Ex. XII 3.) We also reject Appellant's argument that the IRO failed to consider lesser forms of restraint.

The IRO record set forth all the factors the IRO was required to address, and the evidentiary standard to be used. There is no reason to assume that the IRO disregarded these portions of the form he evidently had in front of him while conducting the proceeding. We have found no case holding, or even suggesting, that an IRO must mention every factor explicitly or articulate the full rationale supporting the decision.[2]

Appellant argues that the Government had the burden of showing that Appellant would engage in further misconduct; Appellant did not have to put on any evidence at all. More precisely, the Government's burden is to show that confinement is necessary because *it is foreseeable that* the prisoner will engage in serious criminal misconduct, not that the prisoner actually will do so. Appellant's argument ignores the nature of Appellant's act, as reflected in the IRO record: a premeditated, unambiguously violent assault on a fellow Coast Guardsman. Such an act, quite unexpected in our society, leads to the reasonable conclusion that it may well be repeated, in the absence of further information. In other words, the Government had satisfied its burden to show that it was foreseeable that Appellant would engage in serious criminal misconduct. It is possible to envision explanations for the behavior that would reassure a responsible person that the act was unlikely to be repeated, but in the absence of such an explanation, a prudent decision-maker surely

---

[2] This is not to say that a fuller explanation than the IRO record in this case would be of no use. As noted above, R.C.M. 305(i)(2)(D) requires written conclusions and findings of fact. Purely factual, uncontradicted statements recorded in the IRO record can be assumed to be accepted by the IRO; it is clear enough from the IRO record how the IRO resolved any factual disputes reflected in the IRO record, that is, Appellant's statement that he was defending himself and his aspersions on the witnesses' credibility. Still, that we find this IRO record adequate to support the IRO's decision is to some degree fortuitous. Improved guidance to IROs may be a good idea.

will adhere to the conclusion that serious criminal misconduct is foreseeable. Appellant's statement at the proceeding that he was defending himself was clearly not believed, and his assertion that the victim was not trustworthy was far from a reassuring explanation. In other words, Appellant did not produce "enough" evidence to rebut the Government's prima facie case that it was foreseeable that Appellant would engage in serious criminal misconduct.

Likewise, any other Coast Guardsman may be at risk from such future serious criminal misconduct, leading inexorably to the conclusion that restraints less than confinement would be inadequate to prevent such misconduct. The IRO's failure to articulate this does not mean he did not consider it. In the absence of a reason to believe he disregarded this part of his duty, the military judge was justified in simply reviewing the IRO's implicit conclusion as to the adequacy of lesser forms of restraint. He was also justified in finding no abuse of discretion.

We find no error by the IRO, and no error by the military judge in reviewing the IRO's action.

## Decision

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved below, are affirmed.

Judge KANTOR concurs.



For the Court,

Jane R. Lim
Clerk of the Court